## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

JARED SPENCER GRADELESS,

*Plaintiff,*

v.

KANSAS STATE UNIVERSITY, and ROSS
UNIVERSITY SCHOOL OF VETERINARY
MEDICINE,

*Defendants.*

Civil Action No. 6:22-cv-1148

## COMPLAINT

COMES NOW, Plaintiff JARED SPENCER GRADELESS ("Plaintiff" or "Mr. Gradeless"), by and through his undersigned attorneys, and hereby complains and alleges against the above-named Defendants, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

## INTRODUCTION

1.    Mr. Gradeless seeks damages and injunctive relief for breaches of contract by KANSAS STATE UNIVERSITY ("KSU") and ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE ("RUSVM") that occurred while Mr. Gradeless was a RUSVM veterinary student completing clinical rotations through KSU.

2.    Mr. Gradeless was subject to arbitrary and discriminatory treatment during his clinical rotations at KSU, completed as part of his fourth year in RUSVM's veterinary program, ultimately resulting in his dismissal from RUSVM. Accordingly, he now petitions this Court for redress in the form of injunctive relief, damages, and costs for violations of Section 504 of the

1

Rehabilitation Act of 1973 ("Section 504") and the Americans with Disabilities Act ("ADA"), as well as of breach of contract.

## PARTIES, JURISDICTION AND VENUE

3.     Plaintiff, Jared Spencer Gradeless, is a resident of Iowa.  At all times relevant herein, Mr. Gradeless was a qualified student in good standing at RUSVM's veterinary program in St. Kitts, West Indies.

4.     Defendant, Kansas State University, is a public university in the State of Kansas that, among other things, contracts with RUSVM to provide clinical rotations and education for RUSVM students.

5.     Defendant, Ross University School of Veterinary Medicine, is a for-profit university chartered and operating a School of Veterinary Medicine in St. Kitts, West Indies. RUSMV additionally has administrative offices, including the Office of Admissions and the Registrar, in North Brunswick, New Jersey.  RUSVM has an affiliation arrangement with KSU for clinical rotations in the State of Kansas, including in this judicial district.

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because Mr. Gradeless asserts claims arising under federal law and pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as Defendants are located in this District or have significant contacts to this District, and the primary events giving rise to Mr. Gradeless's claims occurred therein.

8.     All conditions precedent to the maintenance of this suit and Mr. Gradeless's claims have occurred, been performed or otherwise waived.

## **GENERAL FACTUAL ALLEGATIONS**

9.      RUSVM offers a four-year Doctor of Veterinary Medicine program ("Program").

10.      The vast majority of RUSVM students are U.S. Citizens, and those students as well as others intend to practice in the United States following graduation.  Accordingly, they complete their clinical year in a United States school.

11.      RUSVM contracts with a number of Veterinary Schools in the United States to provide RUSVM's students with their required clinical curriculum.  Upon information and belief, RUSVM does not have the capacity to provide clinical education on its campus in St. Kitts. Accordingly, it relies exclusively on these clinical affiliates to provide its fourth-year curriculum.

12.      Under RUSVM's policies and contracts with these clinical affiliates, while the clinical affiliates retain final say in accepting students, RUSVM controls which clinical affiliate each student is referred to.

13.      Further, to enable its students to receive federal student loans throughout their time in the Program, RUSVM participates in and accepts federal financial assistance through participation in Title IV federal student loan programs.  In fiscal year 2020, RUSVM derived at least 84% of its revenue from federal financial assistance programs.

14.      To participate in the Title IV loan program, RUSVM must enter into a Program Participation Agreement ("PPA") with the United States Department of Education. Upon information and belief, among the terms contained in the PPA, RUSVM affirms that it is subject to and will comply with numerous federal statutes and regulations, including the non-discrimination statutes and regulations applicable to recipients of federal financial assistance and specifically Section 504 of the Rehabilitation Act and its implementing regulations.

3

15.     In August 2017, Mr. Gradeless enrolled in RUSVM's Program with an anticipated graduation date of May 2021.

16.     By spring 2020, Mr. Gradeless successfully completed his first three years in the Program, and was scheduled to start his final, clinical year.

17.     Prior to his clinical year, Mr. Gradeless informed RUSVM that he suffered from malignant hyperthermia, a severe and life-threatening reaction to certain drugs used for anesthesia, including those typically used in veterinary medicine, but that he could participate safely in activities with an appropriate respirator and other accommodations including breaks.

18.     Mr. Gradeless informed RUSVM, and KSU as his eventual clinical placement, that he could participate in clinical activities involving anesthesia with an appropriate respirator.

19.     However, in July 2019, Dr. Robert O. Gilbert, RUSVM's Associate Dean for Academic Affairs, instructed Mr. Gradeless not to take a clinical course in anesthesia because the risks were "too severe."  This instruction was issued without appropriate evaluation of the risks presented by Mr. Gradeless's condition and the accommodations that would allow him to safely participate.

20.     A course in anesthesia is required for graduation and licensing.  Accordingly, unwilling to give up on a program he could complete with appropriate accommodations, Mr. Gradeless proceeded to prepare for his clinical year.

21.     Mr. Gradeless, like other students, submitted his top four school choices for clinical rotations.  He was ultimately placed at his second choice, KSU.

22.     He then moved to Kansas and began his clinical year at KSU in May 2020.

23.     Like all other students on clinical rotation, Mr. Gradeless remained an RUSVM student and continued to pay tuition to RUSVM while participating in KSU's clinical year program and remained subject to its handbook and policies.

24.     Upon information and belief, clinical affiliates of RUSVM are expected to provide students with feedback during the course of their rotations, to provide them with the opportunity to learn and improve on any areas of concern.  It is, in fact, the primary purpose of the rotations – to practice and improve on skills in a real-world setting.  Upon information and belief, the requirement to provide feedback to students participating in rotations is included as a term in RUSVM's contract with its clinical affiliates.

25.     Mr. Gradeless successfully completed his first three rotations at KSU, notwithstanding the ongoing COVID-19 pandemic.

26.     As required, Mr. Gradeless's clinical year included an anesthesia rotation scheduled to being in December 2020.  However, before he could reach the rotation, KSU and RUSVM ensured that he could not continue.

27.     In June 2020, Mr. Gradeless began his Small Animal General Medicine course. During the rotation, he received some feedback, such as using the animal's name in the discharge notes, which he immediately used to change his actions and incorporated into his practice for the remainder of the three-week rotation.  His performance, while not perfect, was in line with expectations for veterinary students still in training and in line with that of his peers.

28.     Nonetheless, he received an unsatisfactory rating from the two professors, who claimed he asserted a lack of empathy as a result of his initial – but corrected – failure to use pets' names and faulted him for being collegial and very helpful to others, because he did not similarly ask others to help him.  The professor's criticism did not connect his perceived failure to ask for

help to any skill deficits and this and other concerns were not raised during the course of the rotation.

29.     As a result of the professors' ratings, he received a "D" in the rotation.

30.     Mr. Gradeless subsequently successfully completed a rotation in Small Animal Emergency Medicine – a rotation substantially overlapping in content and skills with the Small Animal General Medicine rotation, indicating Mr. Gradeless did not lack any necessary knowledge or skills, and no concerns were noted with his empathy or ability to ask for help, further evidencing the fact that his unsatisfactory rating in the prior rotation was arbitrary.

31.     In August 2020, Mr. Gradeless began his Orthopedic Surgery rotation at KSU. During the rotation, he was not provided with any specific feedback regarding his performance or areas he needed to improve.  In fact, his mid-rotation evaluation indicated no concerns and noted he was doing fine.

32.     Just prior to the end of the evaluation, Mr. Gradeless experienced a reaction to the anesthesia used in a procedure.

33.     Shortly thereafter, he was informed that he failed the rotation because he did not display necessary case management and planning skills.  Oddly, this unsatisfactory evaluation praised him empathy and care for patients, suggesting, yet again, that the criticisms directed at Mr. Gradeless were not the true reason for his unsatisfactory evaluations.

34.     As a result of this second unsatisfactory evaluation, on August 25, 2020, KSU dismissed Mr. Gradeless, but informed him he could petition for readmission.  RUSVM similarly informed Mr. Gradeless he would be automatically dismissed from RUSVM, without independent consideration of the issue by RUSVM, unless he was successfully readmitted.

35.     Mr. Gradeless timely petitioned KSU's Academic Review Committee for readmission, outlining, as required, his plan for addressing the supposed deficiencies identified in his evaluations.  Prior to submitting his petition, he had the submission reviewed by Dr. Fortune Sithole, at RUSVM, who provided some feedback, which Mr. Gradeless incorporated, but otherwise advised that the petition and his plan for addressing the issues looked good.

36.     KSU nonetheless denied him readmission for a supposed lack of specificity in his readmission plan.  KSU additionally informed Mr. Gradeless that in order to qualify for readmission, he would need to obtain a psychological evaluation to identify any learning disorders, address those learning issues, work in person in a small animal veterinary clinic for at least six months, and meet with Ross faculty advisors to improve communication skills.

37.     Finally, despite denying Mr. Gradeless readmission due a supposed lack of specificity the plan he developed to address his areas of weakness, KSU informed him he would otherwise need to design his own remediation plan, and there was neither a set time nor set criteria for reapplying.

38.     At this time, in October 2020, Mr. Gradeless asked RUSVM to transfer to a different clinical placement to complete his fourth year, to avoid a repeat of the issues at KSU.  He additionally obtained counsel, who sent RUSVM a letter noting the apparent disability discrimination given RUSVM's prior statements, the failure immediately after an anesthesia reaction, and his upcoming anesthesia rotation, as well as the arbitrary, unsupported and bad faith evaluations by KSU.

39.     Though RUSVM has permitted students to transfer clinical sites before, and had the ability to allow such a transfer, RUSVM refused.

40.     KSU had indicated that RUSVM would assist him in finding the required veterinary practices to work in – notwithstanding that most remained closed due to the COVID-19 pandemic – but RUSVM declined to do so.

41.     Mr. Gradeless ultimately found a placement at a clinic near KSU, at Fur Family Animal Hospital for approximately three months during which he assisted with small animal cases and surgeries.  He then moved to Little Apple Veterinary Hospital, where he performed similar work.

42.     As a result of his capable performance during his volunteer placement, Little Apple Veterinary Hospital ultimately offered him a paid veterinary assistant position until his readmission, and further indicated it wished to hire him as soon as he finished his degree.

43.     One of the veterinarians at the clinic wrote him a recommendation letter noting that he had done an outstanding job training staff there and displayed compassion and empathy in communication with clients about their pets.  She described him as amazing in assisting in surgeries and interpretation of tests and diagnostic imaging, and stated he was "quite knowledgeable" and presented cases with great detail.  She concluded by noting she would not hesitate to employ him immediately following receipt of his degree and, given his performance, would even consider adding him as a partner in ownership of the clinic in a few years.

44.     Mr. Gradeless ultimately received "permission" from RUSVM to reapply to KSU and submitted his application for readmission along with recommendation letters from RUSVM faculty.  RUSVM faculty indicated he had applied himself and put substantial effort into his improvement activities and readily accepted and applied feedback, and further that they believed he demonstrated the skills necessary to resume learning in a clinical setting.

45.     KSU readmitted Mr. Gradeless in August 2021, and he was scheduled to resume his rotations at the end of the month, beginning with Veterinary Diagnostic Imaging.

46.     While the class material for Diagnostic Imaging was made available to KSU students, Mr. Gradeless did not have access to it until after the class started, hindering Mr. Gradeless's ability to succeed in the rotation.

47.     Mr. Gradeless performed well in the clinic and on quizzes but received a grade just below passing on his final exam.  He was advised to study less before his retake, because he clearly knew the material notwithstanding his exam grade.

48.     Shortly after completing the retake exam, Mr. Gradeless was asked to attend a meeting at 5:00 p.m. that same day.  At that meeting, despite KSU's acknowledgment that he knew the material on the exam, and the lack of any identified issues during his rotation, he was informed he was being dismissed immediately.

49.     It was only after his dismissal that he saw his exam results, which again were just below passing.  But for his prior unsatisfactory grades, including the grade in his Orthopedic Surgery Rotation, the D in this rotation would not have resulted in a dismissal from KSU.

50.     RUSVM subsequently informed Mr. Gradeless that his dismissal from KSU triggered an "automatic dismissal" from RUSVM, without further consideration.

51.     RUSVM informed Mr. Gradeless that he could appeal the automatic dismissal, though this "appeal" was in essence his sole opportunity to address the issue with RUSVM.

52.     Mr. Gradeless timely appealed on September 20, 2021 and was offered only fifteen minutes with RUSVM's Academic Review Committee ("ARC") on October 11, 2021.

53.     Under RUSVM policies, the ARC was to make a recommendation to the Dean.

54.     While RUSVM indicated a decision would occur shortly, it was not until January 10, 2022, that Mr. Gradeless received a letter from RUSVM's registrar informing him that the Dean was denying his appeal.

55.     The letter stated,

> Critical factors which led to this decision included but were not limited to failure to demonstrate sustained academic improvement after receiving substantial academic support during the clinical rotations and lack of objective evidence that would support your success in the program were you to be readmitted.

56.     This was the first time Mr. Gradeless was provided with a basis for dismissal <u>from RUSVM</u>.  Had RUSVM informed him of these bases earlier, and given him an opportunity to respond, he would have noted the evidence directly contradicting the Dean's bases for dismissing him, including RUSVM's own faculty's determination prior to his readmission that he had made significant improvement, the evidence from an actual veterinary practice that he was more than capable of practicing at a veterinarian, and the fact that no deficiencies in his knowledge or clinical skills were noted in his Diagnostic Imaging rotation.

57.     However, RUSVM's procedure failed to provide Mr. Gradeless with notice of the bases on which RUSVM was dismissing him prior to this point, and thus Mr. Gradeless was entirely deprived of an opportunity to respond.

58.     RUSVM further informed Mr. Gradeless that the decision was final, with no "further" ability to appeal – notwithstanding that, again, this was the first independent decision regarding his dismissal RUSVM had made, and thus was not a true appeal opportunity.

59.     Mr. Gradeless is not eligible for readmission to RUSVM.  Further, following Mr. Gradeless's dismissal from RUSVM, he contacted several veterinary medicine programs and was informed that the dismissal would prevent him from transferring or being accepted.  However, he

was informed by at least one program that they would be willing to allow Mr. Gradeless to complete his clinical year there, provided RUSVM reversed its dismissal.

60.     As a result of Defendants' actions, Mr. Gradeless has lost more than three years of work, incurred more than $300,000 in debt, and has forever lost the opportunity to pursue a veterinary degree.

## COUNT I

***VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq., and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq.***
***(DISABILITY DISCRIMINATION)***
**Against Kansas State University**

61.     Each of the allegations set forth in paragraphs 1 through 60, inclusive, are hereby incorporated by this reference as if realleged fully herein.

62.     Title II of the ADA provides, "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The RA provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."  29 U.S.C. § 794(a).  Because the language of these two provisions is substantially similar, claims under both acts are generally analyzed together.

63.     As a public university, KSU is subject to the mandate of the ADA and receives federal financial assistance ("FFA"), as defined by 29 U.S.C. § 794, including by virtue of its participation in and receipt of loans from the federal student loan program and, as such, may not discriminate against a person because of his disabilities.

64.     That Mr. Gradeless is a "qualified individual with a disability."  Mr. Gradeless suffers from malignant hyperthermia, a severe and life-threatening reaction to certain anesthesia drugs which can include high body temperature, abnormal breathing, muscle rigidity, breakdown of muscle fibers, and resulting in the failure of multiple organs.  As such, Mr. Gradeless's condition, when active, substantially limits major life activities including but not limited to breathing, the body's temperature regulation, functioning of muscle and functioning of organs.

65.     Notwithstanding his condition, Mr. Gradeless is able to safely participate in all activities required by the clinical rotations provided he receives reasonable and necessary accommodations, including use of a respirator and breaks when necessary.

66.     Mr. Gradeless wore a prescription-fitted respirator at all times when anesthesia might be a problem, including recovery, surgery, and pre-op/post-op surgery diagnostic imaging, which could change the amount of time he required to complete certain activities, reduce the facility with which he communicated relative to those without his disability, and obscured facial expressions that others might rely on to determine if he was displaying appropriate empathy. Nonetheless, Mr. Gradeless was able to perform all tasks of his clinical rotation with the respirator and KSU did not raise concerns otherwise or offer any other accommodations.

67.     KSU discriminated against Mr. Gradeless on the basis of his disability when it:

     a.  Penalized Mr. Gradeless for the impact of his accommodation, such as faulting him for a supposed lack of empathy, resulting in unsatisfactory rotation ratings.

     b.  Penalized Mr. Gradeless for having a reaction to anesthesia by giving him an unsatisfactory grade for his Orthopedic Surgery Rotation.

    c. Dismissed Mr. Gradeless from KSU based on the discriminatory unsatisfactory ratings and subsequently denied him readmission.

    d. Dismissed Mr. Gradeless from KSU a second time, a determination that depended on KSU's previous discriminatory unsatisfactory ratings.

68. As a result of KSU's discrimination, Mr. Gradeless incurred substantial additional costs during the year he was forced to wait to seek readmission, and KSU's actions ultimately resulted in his dismissal from RUSVM entirely.

69. As a direct and proximate result of the unlawful discrimination against Mr. Gradeless in violation of the ADA and the RA by KSU, Mr. Gradeless has suffered and continues to suffer damages academically, financially, and emotionally in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

70. It has been necessary for Mr. Gradeless to obtain the services of an attorney to prosecute this action, and Mr. Gradeless is entitled to an award of attorney's fees and costs of suit incurred herein.

71. Mr. Gradeless is entitled to injunctive and declaratory relief to obtain readmission to RUSVM's veterinary program and a transfer to another clinical site to complete his clinical year.

## COUNT II

### *VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq. and SECTION 504 OF THE REHABILITATION ACT (DISABILITY DISCRIMINATION)*

### Against Ross University School of Veterinary Medicine

72. Each of the allegations set forth in paragraphs 1 through 71, inclusive, are hereby incorporated by this reference as if realleged fully herein.

73.     Mr. Gradeless is a "qualified individual with a disability."  Mr. Gradeless suffers from malignant hyperthermia, a severe and life-threatening reaction to certain anesthesia drugs which can include high body temperature, abnormal breathing, muscle rigidity, breakdown of muscle fibers, and result the failure of multiple organs.  As such, Mr. Gradeless's condition, when active, substantially limits major life activities including but not limited to breathing, the body's temperature regulation, functioning of muscle and functioning of organs.

74.     Notwithstanding his condition, Mr. Gradeless is able to safely participate in all activities required by the clinical rotations provided he receives reasonable and necessary accommodations, including use of a respirator and breaks when necessary.

75.     RUSVM receives federal financial assistance through participation in the federal student loan program, as defined by 29 U.S.C. § 794, and is subject to the mandate of the ADA as an institution of public accommodation, and, as such, may not discriminate against a person because of her disabilities.

76.     RUSVM operates the fourth year of its Program through placement of students in U.S. veterinary schools, including KSU.  Accordingly, RUSVM operates its Program within the United States through its agent affiliates such as KSU.  RUSVM acknowledges in its Student Handbook that it operates a portion of its program within the United States, and thus is subject to applicable non-discrimination laws.

77.     RUSVM's administrative offices, which manage, at minimum, admissions, enrollment, financial aid, billing, and payments, as well as its Office of Student Disability services who oversees RUSVM's accommodations and process for ensuring students are not denied access or participation in RUSVM programs on the basis of disability are located within the United States. Specifically, the office containing the registrar and managing admissions, enrollment and student

finance is located in New Jersey. Upon information and belief, payments and complaints of discrimination are handled through an office in Illinois.

78.     RUSVM issued its discriminatory dismissal in this matter from its administrative office in New Jersey and Mr. Gradeless was at all relevant times in the United States.

79.     RUSVM discriminated against Mr. Gradeless when it:

    a.  Refused to transfer Mr. Gradeless to another clinical site despite being informed of KSU's discrimination.

    b.  Took no action to ensure that Mr. Gradeless was not subject to further discrimination when he returned to KSU.

    c.  Automatically dismissed Mr. Gradeless on the basis of KSU's discriminatory dismissal.

    d.  Affirmed that dismissal based on KSU's discriminatory rotation grades and dismissal.

80.     RUSVM wrongly permitted discrimination against and discriminated against Mr. Gradeless, all in violation of his rights pursuant to the ADA and the RA.

81.     As a direct and proximate result of the unlawful discrimination against Mr. Gradeless in violation of the ADA and the RA by RUSVM, Mr. Gradeless has suffered and continues to suffer damages academically, financially, and emotionally in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

82.     It has been necessary for Mr. Gradeless to obtain the services of an attorney to prosecute this action, and Mr. Gradeless is entitled to an award of attorney's fees and costs of suit incurred herein.

83.     Mr. Gradeless is entitled to injunctive and declaratory relief to obtain readmission to RUSVM's veterinary program and a transfer to another clinical site to complete his clinical year.

## COUNT III

### *BREACH OF CONTRACT – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING*

**Against Ross University School of Medicine**

84.     Each of the allegations set forth in paragraphs 1 through 83, inclusive, are hereby incorporated by this reference as if realleged fully herein.

85.     The law imposes a contract on the relationship between students and universities, and the materials actually provided to students may become part of the agreement.

86.     That contractual relationship includes an implied duty of good faith and fair dealing.

87.     Mr. Gradeless had a contract with RUSVM in connection with rights spelled out in the RUSVM Student Handbook in connection with his enrollment in and payment of tuition to RUSVM.  These rights specifically applied and were intended to apply during the course of Mr. Gradeless's clinical year while he was engaged in instruction at a clinical affiliate.

88.     Mr. Gradeless complied with the mandates of the contractual materials governing his relationship with RUSVM.

89.     RUSVM's Student Handbook, provided to all students, states that "It is RUSVM's policy to provide an environment free of unlawful harassment or discrimination based upon race, creed, color, religion, national origin, sex, age, disability, marital status, sexual orientation, gender identity or expression, citizenship status, or any other category protected by applicable law.

RUSVM complies with all applicable laws regarding discrimination, harassment, retaliation, and equal opportunity."

90.   RUSVM breached its contractual obligations when it:

a.   Refused to transfer Mr. Gradeless to another clinical site despite being informed of KSU's discrimination.

b.   Took no action to ensure that Mr. Gradeless was not subject to further discrimination when he returned to KSU.

c.   Automatically dismissed Mr. Gradeless on the basis of KSU's discriminatory dismissal.

d.   Affirmed that dismissal based on KSU's discriminatory rotation grades and dismissal.

91.   RUSVM breached its contractual obligations when it:

a.   Subjected Mr. Gradeless to disability discrimination.

b.   Permitted KSU to dismiss Mr. Gradeless based on arbitrary and unsupported evaluations.

c.   Arbitrarily and unreasonably refused to transfer Mr. Gradeless to another clinical placement.

d.   Dismissed Mr. Gradeless automatically based on KSU's arbitrary dismissal.

e.   Denied Mr. Gradeless's appeal without providing him an opportunity to respond to the Dean's bases for dismissing him.

f.   dismissed Mr. Gradeless for arbitrary reasons unsupported by the objective evidence

17

92.     As a direct and proximate result of Defendants' unlawful breaches, Mr. Gradeless has suffered and continues to suffer irreparable harm, injury, and damages; including, but not limited to, monetary damages, time and resources, career opportunities and earning capacity, mental and emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation, all in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

93.     Mr. Gradeless is entitled to injunctive and declaratory relief to obtain readmission to RUSVM's veterinary program and a transfer to another clinical site to complete his clinical year.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in his favor, and against the Defendants: (a) for general and compensatory damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; (b) for injunctive and declaratory relief described herein, as the Court deems appropriate; (c) for pre-judgment and post-judgment interest, as provided by law; (d) for interest; and (e) for further relief as justice requires.

DATED this 7th day of July, 2022.

Respectfully submitted,

**COHEN & DUNCAN ATTORNEYS, LLC**

*s/ Andrew M. Duncan*

Andrew M. Duncan     D. Kan. #78468

7015 College Blvd., Suite 375

Overland Park, KS 66211

Telephone: (785) 979-9361

Facsimile: (913) 345-2557

AD@studentrightslawyers.com

and

**THE BACH LAW FIRM, LLC**

Jason J. Bach

*Pro Hac Vice Admission Pending*

7881 W. Charleston Blvd., Suite 165

Las Vegas, NV 89117

Telephone: (702) 925-8787

Facsimile: (702) 925-8788

JBach@bachlawfirm.com

*Attorneys for Plaintiff*