IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JARED SPENCER GRADELESS,<br><br>Plaintiff,<br><br>v.<br><br>KANSAS STATE UNIVERSITY, et al.,<br><br>Defendants. | Case No. 6:22-cv-01148-JWB |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Kansas State University's ("KSU") motion to dismiss Plaintiff's amended complaint under the Americans with Disabilities Act and the Rehabilitation Act. (Doc. 45.) The matter is fully briefed and ripe for decision. (Docs. 45, 48, 51.) KSU's motion is GRANTED IN PART because Plaintiff fails to allege that an official with corrective authority had knowledge of any disability discrimination that may have occurred. Plaintiff is thus not entitled to damages. The remainder of KSU's motion is DENIED.

## I.      Facts and Procedural History

Plaintiff Jared Spencer Gradeless enrolled in a four-year Doctor of Veterinary Medicine program at Ross University School of Veterinary Medicine ("Ross") in 2017 with an expected graduation date in 2021. (Doc. 28 at 3–4.) Ross has an affiliation arrangement with KSU for clinical rotations in Kansas. (*Id.* at 2.) Plaintiff started his final year of the Ross veterinary program in 2020 doing clinical rotations at KSU. (*Id.* at 4.) Plaintiff has malignant hyperthermia, which causes severe reactions to some anesthetic drugs used in veterinary medicine. (*Id.*) These reactions can be life threatening. (*Id.*) Plaintiff informed Ross and KSU that he could participate in activities involving anesthesia so long as he had an appropriate respirator. (*Id.*) KSU faculty in

each of Plaintiff's classes involving anesthesia were informed of Plaintiff's condition and the approval of Plaintiff's respirator as an accommodation.  (*Id.*)

Plaintiff began his Small Animal General Medicine course in June 2020.  (*Id.* at 5.)  He received some feedback during the three-week rotation about using an animal's name in his discharge notes, which he implemented.  (*Id.*)  Plaintiff ultimately received an unsatisfactory rating from two professors, Dr. Susan Nelson and Dr. Neala Boyer, who faulted Plaintiff for lacking empathy due to his failure to use the animals' names and for failing to ask colleagues for help.  (*Id.* at 5–6.)  Plaintiff received a "D" for the rotation due to the two unsatisfactory ratings.  (*Id.* at 6.)  Plaintiff subsequently completed his Small Animal Emergency Medicine rotation successfully, a class with substantial overlap with Small Animal General Medicine.  (*Id.*)  Plaintiff alleges his unsatisfactory rating for lack of empathy was due to his respirator obscuring his facial expressions.  (*Id.* at 12–13.)

Plaintiff began his Orthopedic Surgery rotation in August 2020.  (*Id.* at 6.)  Plaintiff was supervised by Dr. Walter Renberg, Professor Kara Berke, and Dr. James Roush, the Interim Associate Dean of Academic Programs and Student Affairs.  (*Id.*)  Two-thirds of the way through the rotation, Berke and a resident veterinarian, who served as an assisting supervisor, informed Plaintiff that he was passing.  (*Id.*)  Plaintiff experienced a reaction to anesthesia just before the end of evaluation.  (*Id.*)  Renberg informed Plaintiff that he had failed the rotation because Renberg and Berke had determined that Plaintiff did not display necessary case management and planning skills.  (*Id.*)  But Plaintiff's unsatisfactory evaluation praised his empathy and care for patients.  (*Id.* at 7.)[1]

---

[1]   Later in the complaint, Plaintiff appears to allege that Renberg alone gave Plaintiff the unsatisfactory evaluation, to which Berke and Roush deferred.  (Doc. 28 at 14.)

Plaintiff was dismissed from KSU via letter from Dr. Renberg on August 25, 2020, because he had two unsatisfactory evaluations. (*Id.*) The letter informed Plaintiff he could petition for readmission. (*Id.*) Ross told Plaintiff he would be dismissed from Ross unless he was readmitted to KSU. (*Id.*) Plaintiff petitioned for readmission but was denied. (*Id.*) Plaintiff then requested a different clinical placement from Ross but was denied. (*Id.* at 8.) Plaintiff volunteered at a veterinary clinic near KSU for three months and then moved to similar work at Little Apple Veterinary Hospital. (*Id.*) Little Apple ultimately offered Plaintiff a paid veterinary assistant position until his readmission, and informed Plaintiff it wished to hire him as soon as he finished his degree. (*Id.*)

KSU readmitted Plaintiff in August 2021. (*Id.* at 9.) Plaintiff started Veterinary Diagnostic Imaging at the end of the month. (*Id.*) He performed well in the clinic and on quizzes but failed the final examination. (*Id.*) Plaintiff also failed the retake examination, which gave him a "D" in the rotation. (*Id.*) KSU immediately dismissed Plaintiff because he had previous unsatisfactory grades in addition to his unsatisfactory grade in Veterinary Diagnostic Imaging. (*Id.*) The dismissal was communicated to Plaintiff at a meeting with Dr. Roush, Dr. Davis, head of the Clinical Sciences Department, and Dr. Hallman, instructor for the course. (*Id.*) Plaintiff's dismissal from KSU triggered automatic dismissal from Ross. (*Id.* at 10.) Plaintiff appealed his dismissal from Ross, but Ross denied his appeal. (*Id.*)

Plaintiff sued KSU and Ross for alleged violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). (Doc. 1 at 11–15.) Plaintiff also brought a breach of contract action against Ross. (*Id.* at 16.) In a previous order, the court denied Ross's motion to dismiss and took KSU's motion to dismiss under advisement. (Doc. 27.) The court ordered Plaintiff to file an amended complaint to

avoid dismissal of his claims against KSU.  (*Id.* at 16.)  Plaintiff brings the same claims in his amended complaint, (Doc. 28) and KSU again moves to dismiss.  (Doc. 45.)

## II.     Standard

To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).   All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Id.* Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.    Analysis

Claims under Title II of the ADA (related to public accommodations) and Section 504 of the Rehabilitation Act are analyzed together because they involve the same substantive standards.  *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1245 (10th Cir. 2009).  To prevail on a claim under these provisions, a plaintiff is required to prove:

> (1) that he [or she] is a qualified individual with a disability;
> (2) that he [or she] was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
> (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) (alterations in original) (quoting *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1439 (D. Kan. 1994)).  KSU argues for dismissal on several bases, which the court addresses in turn.

### A.  Whether Plaintiff Is Disabled

KSU argues that Plaintiff is not disabled because he has not sufficiently pleaded that his identified major life activities are substantially limited.  (Doc. 45 at 6.)  Specifically, Plaintiff's

malignant hyperthermia only affects his breathing, body temperature regulation, and muscle and organ functioning when active, which is too narrow of a limitation on Plaintiff's bodily functions. (*Id.* at 6–7.)  Plaintiff argues that he has clearly pleaded a physical impairment that impacts a range of bodily functions and systems.  (Doc. 48 at 4.)  Plaintiff argues that the ADA specifically states that an episodic impairment is a disability if it would substantially limit a major life activity *when active*.  (*Id.*)

Under the ADA, a disability includes "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).  Major life activities include breathing and the operation of major bodily functions.  § 12102(2).  "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." § 12102(4)(D).

Here, as alleged, Plaintiff's malignant hyperthermia can be life-threatening when active because it substantially limits major life activities such as breathing, the body's temperature regulation, the functioning of muscles, and the functioning of organs.  (Doc. 28 at 12.)  KSU's caselaw to the contrary is largely unhelpful because most of those cases were made without the benefit of the express expansion of the definition of disability under the Americans with Disabilities Act Amendments Act ("ADAAA").   The law now expressly includes episodic impairments. § 12102(4)(D).

Of KSU's more recent cases, *Ellenberg v. New Mexico Military Institute*, 572 F.3d 815 (10th Cir. 2009), merely affirmed *summary judgment* for the defendant because the plaintiff provided *no evidence* of an impairment that substantially limited a major life activity.  *Id.* at 824. The plaintiff merely contended "that eligibility for special education under the IDEA is sufficient

to establish a prima facie discrimination case under the ADA as well." *Id.* *Ellenberg* thus does not provide a basis to dismiss Plaintiff's complaint.

Meanwhile, *Webb-Eaton v. Wayne County Community College District*, No. 12-14821, 2013 WL 3835208 (E.D. Mich. July 24, 2013) is distinguishable because the plaintiff did not identify any major life activity limitation in her complaint, and then only mentioned "learning" as an affected life activity in her response to a motion to dismiss. *Id.* at *4. The court held that the plaintiff's major life activity of learning generally was not affected by her latex allergy, but rather her specific ability to study nursing at the community college. *Id.* at *5. Thus, the plaintiff was not disabled on that basis. *Id.* Here, Plaintiff has pleaded several major bodily functions that are substantially limited when his medical condition is active. KSU's motion is denied on this point.

**B.  Whether Plaintiff Is Qualified**

KSU next argues that Plaintiff was not qualified to participate in the KSU clinical program because he had a reaction to anesthesia in Orthopedic Surgery even with his requested accommodations. (Doc. 45 at 8.) Plaintiff responds by noting that KSU allowed him to continue the program after his reaction and readmitted him after his initial dismissal. (Doc. 48 at 5.) Thus, Plaintiff argues the reasonable inference at this stage is he is qualified. (*Id.*)

"The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

KSU relies on *Knapp v. Northwestern University*, 101 F.3d 473 (7th Cir. 1996), a Rehabilitation Act case where the Seventh Circuit reversed denial of summary judgment for Northwestern. *Id.* at 486. There, the plaintiff had sued under the Rehabilitation Act when he was

denied the ability to practice or play on the men's basketball team due to a heart defect that placed him at an increased risk of death. *Id.* at 476–77. The Seventh Circuit held that the plaintiff was not "otherwise qualified" to play basketball at Northwestern. *Id.* at 482. In so holding, the Seventh Circuit noted that "[a] significant risk of personal physical injury can disqualify a person from a position if the risk cannot be eliminated." *Id.* at 483. Here, however, the case is at the motion-to-dismiss phase. As alleged, KSU did not dismiss Plaintiff either time explicitly based on his health condition, unlike Northwestern, which explicitly denied the plaintiff the ability to play basketball due to his hearth condition. Thus, the allegations that KSU allowed Plaintiff to continue in clinical rotations after his reaction and readmitted him to the program after his reaction make it plausible that Plaintiff was qualified for the program notwithstanding his health condition. KSU's motion to dismiss on this ground is denied.

### C.  Whether Plaintiff's Grades Were Based On Disability

Next, KSU argues that neither Plaintiff's grade in Small Animal General Medicine, nor his grade in Orthopedic Surgery were based on his disability or his respirator accommodation. (Doc. 45 at 9.) Plaintiff responds by arguing KSU is trying to dispute facts and draw inferences against him, which is inappropriate at this litigation stage. (*See* Doc. 48 at 6.)

KSU's argument repackages the argument this court rejected in KSU's prior motion to dismiss. (Doc. 27 at 5–7.) Here, multiple inferences remain. One inference is that Plaintiff's grades had nothing to do with his health condition. Another inference is that Plaintiff's drastically different feedback at different times and in different courses indicates that the stated reasons for his unsatisfactory grades were not genuine, and thus he was perhaps being discriminated against based on disability. The Court denies KSU's motion to dismiss on this ground.

### D.  Whether Plaintiff Only Seeks Compensatory Damages

In this court's prior order, it found that Plaintiff's initial complaint failed to put KSU on notice as to what injunctive relief he was seeking from KSU, and ultimately held that Plaintiff's complaint only sought damages from KSU.  (Doc. 27 at 5–6.)  Plaintiff's amended complaint has clarified that he seeks "rescission and retraction of the discriminatory grading decisions and dismissal decisions imposed by KSU."  (Doc. 28 at 15.)  KSU again argues for dismissal of any injunctive and declaratory relief because such relief would have no effect and is moot.  (Doc. 45 at 10.)  Plaintiff argues that he continues to suffer the ill effects of the KSU grades and dismissals because they prevent him from continuing his education at Ross and from pursuing a veterinary program at any other school.  (Doc. 48 at 9.)

Courts have found that claims for injunctive and declaratory relief are not moot when a former student seeks to remove blemishes on his or her academic record.  *See, e.g.*, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005); *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007).  For example, in *Constantine*, the Fourth Circuit reversed the district court's dismissal and held that the plaintiff had *inter alia* sufficiently alleged claims for disability discrimination in violation of Title II of the ADA and § 504 of the Rehabilitation Act.  411 F.3d at 501.  However, all the plaintiff's claims for injunctive relief were moot upon her graduation from law school *except* for her request that GMU expunge a failing grade from her record.  *Id.* at 496 n.15.  The failing grade continued to hamper the plaintiff's employment prospects after graduation, and thus the request to expunge plaintiff's academic record was not moot.  *See id.* at 479.

Here, as alleged, Plaintiff's future goals remain hampered by KSU's grading and dismissal decisions.  KSU provides no caselaw to dispute this determination.  The lone ADA case KSU

provides to argue for dismissal is *Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019). *Hamer* is a statute of limitations case, but KSU points to dicta involving a hypothetical plaintiff who would be unable to challenge ADA-noncompliant sidewalks because he had moved away from a city with no intent to return. *Id.* at 1109–10. Thus, KSU argues by analogy that because Plaintiff does not seek to return to KSU, he can no longer seek injunctive and declaratory relief. (Doc. 45 at 10.) But unlike sidewalks, bad grades and dismissals can follow a person. Plaintiff has alleged that KSU's actions continue to harm his academic record, and that is sufficient to survive dismissal. The court denies KSU's motion on this point.

### E. Whether Any KSU Official with Authority to Correct the Alleged Discrimination Had Knowledge

A plaintiff seeking damages under the ADA and Rehabilitation Act "must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir.), *cert. dismissed*, 142 S. Ct. 2855, (2022). In this court's prior order, it held that vicarious liability is not available in suits for damages under Title II or Section 504. (Doc. 27 at 7–10.) Consequently, a plaintiff must allege that an official who has authority to address the alleged discrimination and to institute corrective measures on a defendant's behalf has actual knowledge of discrimination in the defendant's programs and fails to adequately respond. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). And "[w]here a [defendant's] liability rests on actual notice principles, . . . the knowledge of the wrongdoer himself is not pertinent to the analysis." *Id.* at 291.[2]

---

[2]    Plaintiff attempts to relitigate the court's use of this standard. (Doc. 48 at 10-12.) The court declines to revisit its earlier holding that the rule in *Gebser* applies to Title II and Section 504.

KSU argues Plaintiff is not entitled to compensatory damages. (*See* Doc. 45 at 11.) KSU further argues that an appropriate official who must have knowledge in this instance would be someone who can discipline or control the discriminator, i.e., someone who has authority over the professors who gave the unsatisfactory grades resulting in dismissal. (*See id.* at 12.) KSU bases this argument on caselaw from the Tenth Circuit in the Title IX student-on-student harassment context. *See Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999). KSU argues dismissal is appropriate because Plaintiff fails to identify such an individual. (Doc. 45 at 12.) Plaintiff primarily argues against the application of vicarious liability. (Doc. 48 at 10–12.) But Plaintiff also argues in the alternative that, even if that standard applies, the motion to dismiss stage is not the appropriate time to determine whether an official with proper authority had notice. (*Id.* at 12.) Plaintiff also argues that the appropriate person standard is irrelevant because KSU made faculty responsible for implementing accommodations and KSU was responsible for Plaintiff's dismissal. (Doc. 48 at 13.)

KSU has the better argument. For example, in *Ingram*, the Title II plaintiff was an arrestee who was allegedly discriminated against by a police deputy. 30 F.4th at 1247. The Title II portion of the case centered on whether the alleged appropriate person, the sheriff, had actual knowledge of any disability discrimination in his department. *See id.* at 1249, 1259. Similarly, the parties in a Tenth Circuit Title IX professor-on-student harassment case agreed that an appropriate person to notify was the university president. *Escue v. N. OK Coll.*, 450 F.3d 1146, 1150, 1152 (10th Cir. 2006). On the other hand, Plaintiff's argument makes "official with corrective authority" equivalent with a professor who gave him a bad grade because Plaintiff's grades are what triggered the dismissals in this case. Under this standard, any university could be liable for any grading decision by any of its professors. It also flies in the face of the Supreme Court's directive that the

knowledge of the alleged wrongdoer does not factor into the consideration of a defendant institution's knowledge of discrimination.  *Gebser*, 524 U.S. at 290.

Granted, Plaintiff argues in passing that it is reasonable to infer that Roush, as Interim Associate Dean of Academic Programs and Student Affairs, was an appropriate person with knowledge of discrimination.  (Doc. 28 at 13.)  But Plaintiff does not develop this argument. Turning to Plaintiff's amended complaint, Plaintiff does not allege that Roush had any knowledge about the grading in Small Animal General Medicine.   And regarding Orthopedic Surgery Rotation, Plaintiff merely alleges that Roush, as his professor, could have made sure he had a better grade, and that Roush could have reported Renberg for disability discrimination due to Renberg's unsatisfactory rating of Plaintiff.  (Doc. 28 at 13–14.)  But Roush was in the shoes of any other professor when giving a grade, and reporting discrimination is not corrective action.  *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1289–90 (10th Cir. 2017) (holding campus security officials who could pass on a report of sexual harassment were not officials who could take corrective action).   But Plaintiff does not allege that Roush had control over Renberg or otherwise explain how Roush was an appropriate person whose knowledge of discrimination was sufficient to hold KSU liable.  Thus, KSU's motion to dismiss Plaintiff's claim for damages is granted.[3]

## IV.    Conclusion

For the reasons stated herein, KSU's motion to dismiss (Doc. 45) is GRANTED IN PART. Plaintiff's claim for damages is DISMISSED.  The remainder of KSU's motion is DENIED.

IT IS SO ORDERED.

Dated: October 6, 2023                    /s/ John W. Broomes
                                          JOHN W. BROOMES
                                          UNITED STATES DISTRICT JUDGE

---

[3]    Because the court holds that Plaintiff has not alleged an official with corrective authority had knowledge of discrimination, the court need not address KSU's argument about deliberate indifference.